f:\cases\morsn-kn\pleading\complai3.wpd



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

JOHN B. BLYLER and MALCOLM
J. CORSE, on behalf of themselves and
and all others similarly situated,

    Plaintiffs

  vs.

WILLIAM J. AGEE, ROGER P. ALLEN,
HAROLD ANDERSEN, JOHN
ARRILLAGA, ZBIGNIEW BRZESINSKI,
WILLIAM P. CLARK, LINDSAY E. FOX,
EDMUND J. GORMAN, STEPHAN HANKS,
CHRISTOPHER B. HEMMETER, PETER
S. LYNCH, ROBERT A. MCCABE, MELLON
BANK, N.A., ROBERT S. MILLER, JR., IRENE
C. PEDEN, JOHN W. ROGERS, JR., GERALD
R. ROCHE, GUNNAR E. SARSTEN,
ROBERT A. TINTSMAN, PETER V.
UEBERROTH, MORRISON KNUDSEN
401(k) SAVINGS PLAN, JOHN ZABALA,
T. ROWE PRICE TRUST COMPANY
and DOES 1 THROUGH 20,

    Defendants

**CIV 97 - 0 332 - S - BLW**

## CLASS ACTION COMPLAINT

### NATURE OF THE ACTION

1.  This is a class action brought by current and former participants of the

Morrison Knudsen Employee Stock Ownership Plan ["ESOP"] and/or the Morrison Knudsen

401(k) Savings Plan ["401(k) Plan"] and their beneficiaries to recover retirement account losses

resulting from the multiple breaches of fiduciary duty by the fiduciaries of the two plans.

1.

Plaintiffs' claims arise from defendants' failure to act in the exclusive interest of the beneficiaries of the plans and from their failure to exercise prudence and diligence because of their conflicting interests and responsibilities related to the management and operation of Morrison Knudsen Corporation ["MK"].

## JURISDICTION AND VENUE

2. Subject matter jurisdiction exists because of the presence of a federal question under 28 USC § 1331, involving the Employee Retirement Income Security Act ["ERISA"], 29 U.S.C. §§ 1001, *et seq*. Before its dissolution the ESOP was an employee benefit plan within the meaning of ERISA. MK 401(k) Plan at all times relevant hereto has been an employee benefit plan within the meaning of ERISA.

3. Venue is proper in this judicial district pursuant to ERISA, 29 U.S.C. §1132(e)(2) because the ESOP was administered in this district, the 401(k) Plan continues to be administered in this district and many of the breaches of fiduciary duty took place in this district.

## PARTIES

4. Plaintiff JOHN B. BLYLER is a citizen of the State of Idaho, residing in Ada County. Prior to his retirement in 1996, the Plaintiff had worked for MK for 23 years. Plaintiff BLYLER was a "participant" as that term is defined by ERISA, 29 U.S.C. §§ 1002(7) in the ESOP. Plaintiff BLYLER is a former "participant" in the 401(k) Plan. He brings this action on behalf of himself and all others similarly situated to recover losses for the 401(k) Plan and on behalf of the participants and beneficiaries of the terminated ESOP Plan for losses incurred before its termination.

f:\cases\m\rsn-kn\pleading\complai3.wpd

5.      Plaintiff MALCOLM J. CORSE is a citizen of the State of Massachusetts, residing in Franklin County.   Prior to his retirement in 1995, Plaintiff CORSE had worked for MK for 17 years.  Plaintiff CORSE was a "participant" as that term is defined by ERISA, 29 U.S.C. §§ 1002(7) in the ESOP.  Plaintiff CORSE is a "participant" in the 401(k) Plan.  He brings this action on behalf of himself and all others similarly situated to recover losses for the 401(k) Plan and on behalf of the participants and beneficiaries of the terminated ESOP Plan for losses incurred before its termination.

**The ESOP Defendants**

6.      Defendant WILLIAM J. AGEE was Chairman of the Board, President, and/or Chief Executive Officer of MK until his retirement in 1995.  Defendant AGEE was a named fiduciary to the ESOP.  Defendant AGEE is a citizen of the State of California and a resident of Napa County.

7.      Defendant ROGER P. ALLEN was at times relevant to this action MK's Vice President for Compensation and Benefits and a member of the ESOP Administrative Committee.  Defendant ALLEN is a citizen of the State of Idaho and a resident of Ada County.

8.      Defendant HAROLD ANDERSEN was at times relevant to this action a member of MK's Board of Directors and thereby a fiduciary of the ESOP until his resignation on February 9, 1994.  Defendant ANDERSON was at times relevant to this lawsuit a resident of the State of Nebraska.

9.      Defendant JOHN ARRILLAGA was at times relevant to this action a member of MK's Board of Directors and thereby a fiduciary to the ESOP through its termination

3

and transfer of assets.  Defendant ARRILLAGA is a citizen of the State of California resident of the County of Palo Alto.

10.    Defendant ZBIGNIEW BRZESINSKI was a member of the MK Board of Directors and thereby a fiduciary to the ESOP from February 9, 1994, until March  21, 1995.

11.    Defendant WILLIAM P. CLARK was a member of the MK Board of Directors and thereby a fiduciary to the ESOP from  May 17, 1994, until March 20, 1995. Defendant CLARK is a citizen of the State of California.

12.    Defendant LINDSAY E. FOX was at times relevant to this lawsuit a member of MK's Board of Directors, and thereby a fiduciary to the ESOP through its termination and transfer of assets.

13.    Defendant EDMUND J. GORMAN was a Senior Vice President and Executive Officer of MK and, as of September 1993, a member of the ESOP Administrative Committee.  Defendant  GORMAN is a resident of the State of Idaho and the County of Ada.

14.    Defendant STEPHEN HANKS was at times relevant to this lawsuit MK's Chief Financial Officer and Executive Vice President for Finance and Administration, a member of the MK Board of Directors until April 10, 1995, and a member of the ESOP Administrative Committee as of September, 1993.   Defendant HANKS is a citizen of the State of Idaho and a resident of the County of Ida.

15.    Defendant CHRISTOPHER B. HEMMETER was at times relevant to this lawsuit a member of the MK Board of Directors and thereby a fiduciary to the ESOP through its termination and transfer of assets.  Defendant HEMMETER is a citizen of the State of Colorado.

4

16.     Defendant PETER S. LYNCH was a member of the MK Board of Directors from 1988 through 1996, and thereby a fiduciary to the ESOP through its termination and transfer of assets.  Defendant LYNCH is a citizen of the State of Massachusetts and a resident of the County of Essex.

17.     Defendant ROBERT A. MCCABE was a member of the MK Board of Directors from 1972 through 1966, and thereby a fiduciary to the ESOP through its termination and transfer of assets.

18.     Defendant ROBERT S. MILLER; Jr. has been a member of the MK Board of Directors since April 2, 1995 and thereby a fiduciary to the ESOP at the time of its termination and transfer of assets. Defendant Miller served as Chairman of the Board from 1995 until September 11, 1996.

19.     Defendant IRENE C. PEDEN was from 1990 to September 12, 1996, a member of the MK Board of Directors and thereby a fiduciary to the ESOP since 1990 until its termination and transfer of assets. Defendant PEDEN is a citizen of the State of Washington and resident of King County.

20.     Defendant JOHN W. ROGERS, Jr. was from 1993 to September 12, 1996, a member of the MK Board of Directors and thereby a fiduciary to the ESOP since 1993 until its termination and transfer of assets.  Defendant ROGERS is a citizen of the State of Illinois.

21.     Defendant GERALD R. ROCHE was from 1990 to September 12, 1996, a member of the MK Board of Directors and thereby a fiduciary to the ESOP since 1990 until its termination and transfer of assets.

5

22.    Defendant GUNNAR E. SARSTEN, was a member of the MK Board of Directors and thereby a fiduciary to the ESOP until his retirement on May 12, 1994. Defendant SARSTEN is a citizen of the State of Virginia and resident of the County of Accomak.

23.    Defendant ROBERT A. TINTSMAN was a member of the MK Board of Directors from March 8, 1995 through September 12, 1996 and thereby a fiduciary of the ESOP until its termination and transfer of assets. Defendant TINTSMAN served as MK's President and Chief Executive Officer from 1995 through that date.

24.    Defendant PETER V. UEBERROTH was a member of the MK Board of Directors and thereby a fiduciary to the ESOP until his resignation on November 15,1994. Defendant UEBERROTH is a citizen of the State of California and the County of Orange.

25.    Defendant DOES 1 through 10 are fiduciaries to the ESOP whose exact identities will be ascertained through discovery.

26.    The above-named individual defendants described in paragraphs 6 through 25 are hereinafter referred to as ESOP defendants.

27.    Defendant MELLON BANK, N.A. ["MELLON"] was from 1990 to May 1995, the Trustee of the ESOP, and exercised discretionary authority with respect to the ESOP's assets. Defendant MELLON BANK'S principal offices are located in Pittsburgh, Pennsylvania.

**The 401(k) Defendants**

28.    Each of the members of the Board of Directors named above as ESOP Defendant is also a 401(k) Defendant.

29.    Defendant MORRISON KNUDSEN 401(k) PLAN ["401(k) Plan"] is an employee pension plan within the meaning of ERISA, which was intended to meet the tax qualification provisions of the Internal Revenue Code.  The 401(k) Plan is administered in this judicial district.  On December 31, 1994, the Plan had 6,658 participants.

30.    Defendant ROGER P. ALLEN was at times relevant to this action MK's Vice President for Compensation and Benefits.  Defendant ALLEN signed the 401(k)'s Annual Reports On Form 5500 filed with the Department of Labor on October 18, 1994 and October 20, 1995.  Defendant ALLEN was a member of the 401(k) Administrative Committee as of September 1993.  Defendant ALLEN is a citizen of the State of Idaho and a resident of Ada County.

31.    Defendant EDMUND J. GORMAN was a Senior Vice President of MK and Executive Office of MK and a member of the 401(k) Administrative Committee as of September, 1993.   as of September, 1993, a member of the ESOP Administrative Committee.  Defendant EDMUND J. GORMAN is a resident of the State of Idaho and the County of Ada.

32.    Defendant STEPHEN HANKS was at times relevant to this lawsuit MK's Chief Financial Officer and Executive Vice President for Finance and administration; a member of the MK Board of Directors until April 10, 1995; and a member of the 401(k) Administrative Committee during 1994.  Defendant HANKS signed 401(k)'s Annual Reports On Form 11-k filed with the Securities and Exchange Commission on June 29, 1994.  Defendant HANKS is a citizen of the State of Idaho and a resident of the County of Ida.

33.    Defendant JOHN ZABALA was a member of the 401(k) Administrative Committee in 1995 and 1996 and signed the 401(k)'s Annual Reports On Form 11-k filed with

7

the Securities and Exchange Commission on August 31, 1995 and July 16, 1996. Defendant ZABALA is a citizen of the State of Idaho and a resident of Ada County.

34.    Defendant DOES 11 through 20 are fiduciaries to the 401(K) Plan whose exact identities will be ascertained through discovery.

35.    The above-named individual defendants described in paragraphs 28 through 34 are hereinafter referred to as 401(k) defendants.

36.    Defendant T. ROWE PRICE ["TRP'] was at times relevant to this lawsuit the Trustee for the 401(k) Plan.    Defendant T. ROWE PRICE has its principal offices in the State of Maryland.

## FACTUAL ALLEGATIONS

37.    The following allegations are made upon information and belief:

38.    MK was until its reorganization in bankruptcy in 1996 a major international general construction, construction management, and engineering firm which provided construction services around the world.

### MK's Retirement Plans

39.    At all times material to this Complaint,  prior to its termination in 1995, the 401(k) Plan and the ESOP Plan were MK's only active retirement plans for salaried employees.

40.    The 401(k) and ESOP Plan were established when MK terminated its traditional defined benefit pension plan at end of 1987.

8

41.    Effective September 30, 1988, MK purchased 1,220,968 shares of MK common stock to be held in the ESOP in a suspense account.  Upon subsequent periodic allocation to individual ESOP participants' accounts, the shares were held in restricted accounts and could not be sold by the participants, except in cases of financial hardship or termination of employment.

42.    The stated purpose of the ESOP was to provide retirement savings for its participants. The September 1993 Summary Plan Description for the ESOP informed participants that the ESOP ""is intended to help provide [participants and their families] with further financial security and is an additional source of retirement income."  The Summary Plan Description notified participants:

> "Under the ESOP, there is no fixed dollar amount of retirement benefits.  Your actual retirement benefit will depend on the amount of your account balance at the time of retirement. Your account balance will reflect allocations of Company stock to the account and any growth in the value of company stock."

43.    At all times relevant hereto, the members of the ESOP Administrative Committee had the full power and responsibility to administer the Plan including *inter alia* the power to amend the plan, utilize their discretion to engage legal and other services they deemed appropriate to administering the plan, and appoint an independent investment manager.

44.    The ESOP Plan Document permitted the Committee and the Board to delegate any and all of their powers and duties, provided, however, that Committee or Board of Directors were required to "periodically review such other persons' performance and compliance with applicable law and regulations."

9

45.     In a 1990 letter to each participant defendant Agee described the ESOP as "a very important benefit...a valuable financial planning tool...Your ESOP account contributes significantly to your financial security for the present as well as for the future, all the way to retirement."   Chairman Agee attached a brochure to his letter which further described that  the "ESOP is designed for retirement benefits."

46.     According to the ESOP Plan document, the named fiduciaries of the ESOP were MK's Board of Directors and an Administrative Committee made up of no fewer than three MK employees. These employees were usually four top executive officers of MK including the controller or assistant controller, chief legal officer, chief financial officer and/or the vice-president for compensation and benefits.

47.     The ESOP Plan required that the original shares contributed to the ESOP in 1988 be allocated to participants within eight years.

48.     In 1995 the ESOP's suspense account completed allocation of the last shares from the suspense account.

49.     MK also maintained the 401(K) plan, which it established on June 12, 1986.

50.     MK's intent in establishing the 401(k) Plan, as stated in the 401(k) Plan Document, was "for the purpose of enabling eligible employees of the Company and their beneficiaries to accumulate funds to provide for their retirement income requirements."

51.     Similarly, the 1995 Summary Plan Description of the 401(k) Plan informed participants that MK considered the Plan "an important part of your total retirement program. It enables you to save for future needs and receive a company matching contribution on your savings..."

10

52.    The named fiduciaries of the 401(k) Plan were an Administrative Committee made up of no fewer than three MK employees.

53.    As of September 23, 1993, the members of both the 401(k) and ESOP Administrative Committees were the same four persons: defendants R.P. Allen, Vice President for Compensation and Benefits; Edmund J. Gorman, Senior Vice-President and Executive Officer; Stephan G. Hanks, Executive Vice-President - Finance and Administration and Principal Financial Officer; and D.J. Kunz, the President, CEO and Chairman of MK Gold, Inc., a subsidiary or MK.

54.    The trustee for the 401(k) Plan from 1990 on was defendant TRP.

55.    At all times relevant hereto, the members of the 401(k) Plan Administrative Committee had the power, *inter alia,* to amend the plan, utilize their discretion to engage legal and other services they deemed appropriate to administering the plan and appoint an independent investment manager.

56.    In 1991, a Restricted MK Stock Fund and an Unrestricted MK Stock Fund were established as part of the 401(k) Plan. Participants could not transfer or sell the stock in the Restricted MK Stock Fund except in the event of financial hardship or termination of employment. Stock in the Unrestricted MK Fund could be transferred or sold by participants.

57.    MK matched participants' contributions to the 401(k) Plan up to 5% of the participant's eligible compensation. The match consisted of two parts.

58.    The larger match consisted of MK common stock. This match was made, not to the 401(k) Savings Plan, but to the ESOP. It "matched" employee contributions to the 401(k)'s Restricted Stock Account. The match could not exceed 3% of the participant's eligible compensation. Once a participant contributed to the 401(k)'s Restricted Stock Account and

11

received a corresponding matching contribution in company stock to the ESOP, he or she could not sell the MK stock purchased in the 401(k)'s Restricted Stock Account or matched to his or her ESOP.

59.    The second, smaller match consisted of cash contributed by MK to the 401(k) Savings Plan. This contribution matched participants' contributions to any 401(k) Savings Plan account; it was not restricted to participant contributions to the MK Stock Restricted Account.  This match could not to exceed 2% of a participant's eligible compensation.

60.    Matching contributions to the ESOP and to the 401(k) Plan were made on a bi-weekly basis.  The market price of the stock on the last day of trading prior to the match was used to determine the value the shares purchased by employees and contributed by MK.

**Defendants' Failure to Protect the Plan Assets**

61.    On December 31, 1993, the ESOP held more than 1,495,205 allocated shares valued at $37,567,025 and 579,082 MK shares in unallocated accounts, with fair market values of $37,567,025 and $14,549,435 respectively.

62.    On the same day the 401(k) plan held 948,386 shares of MK common stock, with a fair market value of $23,811,256, 812,687 shares in the Restricted Stock Account and 135,699 shares in the Unrestricted Stock Account, valued at $20,418,760 and $3,392,496, respectively.

63.    As of December 31, 1993, the two plans together held 9% of MK's outstanding shares.

64.    The price of MK common stock on December 31, 1993 was $25.12 per share.

65.    By that date, if not before, the ESOP Defendants and 401(k) Defendants, because of information available to them as MK officers and directors, but not the public including plaintiffs, knew or in the exercise of reasonable diligence should have known that MK's operations and finances were substantially deteriorated.

66.    Defendants knew or in the exercise of reasonable diligence should have known that MK was engaged in a risky and speculative business plan; that the execution of that business plan was faltering; that MK had been bidding for and obtaining contracts at less than its cost;  that the company had been unable to deliver on important contracts in time, triggering substantial penalties; that losses, although not disclosed, were considerable and mounting; that cash flow was under severe stress; that the company had sold and leased back substantial amounts of its assets in an effort to gain new cash flow; and that the company's prospects for new contracts were substantially impaired.

67.    These were but a few of the problems that were known or in the exercise of reasonable diligence should have been known by defendants by the end of 1993.  These problems eventually led to MK's bankruptcy, a bankruptcy that was so serious that for a time, the liquidation, rather than the reorganization, of MK was considered.

68.    Despite the written plan provisions authorizing the 401(k) Plan to invest "primarily" in MK common stock, there came a time when that investment was so risky and speculative that it was unsuitable for the prudent investment by the 401(k) Plan under § 404(a) and 402(c)(3) of ERISA.  That date was on or by December 31, 1993.

69.    Despite the Plan provisions authorizing investment by the ESOP in MK common stock, there came a time when that investment was so risky and speculative that it was unsuitable for the prudent investment by the ESOP and as a result such investment substantially impaired the accomplishment of the Plan purposes.

70.    By December 31, 1993, the financial and fiscal condition of MK had deteriorated to such a level that an independent and impartial fiduciary would have begun a process of the orderly sale of MK common stock and the diversification of the ESOP holdings. Defendants' failure to do so was an abuse of discretion.

71.    By December 31, 1993, the financial and fiscal condition of MK had deteriorated to such a level than an independent and impartial fiduciary would have begun a process of the orderly sale of MK common stock and the diversification of the 401(k) Plan holdings.

72.    The Defendants had actual knowledge of the deteriorated financial and fiscal condition of MK or should have known in the exercise of reasonable diligence of such deteriorated financial condition.

73.    Defendants knew or should have known in the exercise of  reasonable diligence that MK's officers had participated in serious mismanagement, which if publicly disclosed would result in a loss of confidence in the prospects for the company.  Defendants did not act on that information to protect the interests of the Plans' participants and beneficiaries.

74.    By December 31, 1993, if not before, a prudent and unconflicted fiduciary would have recognized the need to determine whether it was in the best interests of the plan participants and beneficiaries in these two retirement plans to continue to be so dependent on the

14

f:\cases\morsn-kn\pleading\complai3.wpd

stock of MK, a company with a rapidly deteriorating, although undisclosed, financial condition.

75.    By that date, if not before, defendants had a conflict of interest between their positions as corporate officials whose interests were in delaying the recognition and disclosure of MK's serious financial situation and their obligation as retirement plan fiduciaries to prudently invest the plan assets.

76.    Rather than address the obvious conflict of interest in such a situation, defendants did nothing. They failed to retain an independent investment manager to run the MK stock portfolios of plans. Nor did they take any action themselves to begin an orderly sale of the Plans' investment in MK shares.

77.    On July 19, 1994, MK and certain of the defendants in their roles as corporate officials made the first public disclosure of MK's serious financial condition. On that date, MK announced an unexpected and steep loss. MK's stock price dropped from $20.88 on July 15, 1994, to $15.75 on July 22, 1994 following the announcement, a decline of nearly 25% in one week.

78.    Within ten days of the announcement of those losses, Fidelity Mutual Funds divested their holdings of nearly 1.2 million shares of MK stock, more stock than held by the 401(k) Plan. Fidelity Mutual Funds sold their shares for an average price of $17 per share.

79.    Defendant Peter Lynch, a Trustee of the Fidelity Group of Mutual Funds and Vice Chairman of Fidelity Management & Research Company, a mutual fund and pension management firm, was one of the ESOP fiduciaries. Despite the decision of Fidelity's mutual funds in which Lynch held a substantial equity share, to liquidate their holdings of MK, defendant Lynch and the other MK fiduciaries took no action to sell MK stock held by the plans or warn

15

f:\cases\morsn-kn\pleading\complai3.wpd

participants with unrestricted accounts of the consequences of retention of MK's common stock on their retirement plans.

80.     Following the announcement of MK losses and the steep drop in price of MK common stock, a number of shareholder actions were filed against MK, its Board of Directors and its Executive Officers.  These included serious allegations of wrongdoing, including securities fraud and misrepresentation, against, *inter alia*, defendants Agee and Hanks.

81.     The filing of the shareholder suits naming persons serving as fiduciaries for the two plans as defendants was clear notice to the fiduciaries of the need for an independent and impartial fiduciary, free of conflicts-of-interest between the plan and the plan sponsoring corporation, to assume the role of making of investment decisions for the Plans.  Notwithstanding such clear notice, Defendants took no action throughout 1994, 1995 and into 1996 to delegate to an independent and impartial fiduciary the consideration of whether the plans should continue to retain their substantial and undiversified holdings in MK common stock.

82.     Throughout 1994 and 1995, after further reports of extraordinary losses by MK, the drop in the value of MK stock, and the filing of additional lawsuits alleging securities fraud in continuing the sale of MK stock by persons who were fiduciaries to the Plans -- the defendants failed to appoint any independent and impartial person or entity to determine whether a) an orderly sale of MK stock by the plans was the prudent course, b) whether any claims existed on behalf of the Plans and their participants and beneficiaries with respect to the fiduciaries' actions or inactions, and c) whether and what information should be provided to the participants and beneficiaries concerning continued investment in and retention of MK common

16

stock. Nor did the Defendants take such actions themselves in lieu of appointing an independent investment manager.

83.     By December 31, 1994, MK's common stock was trading at $12.75 per share, down from $25.88 a year earlier, a drop of 48%.

84.     As a result of the fiduciaries failure to act during 1994, the ESOP had lost approximately $24,173,380 since the previous December 31st.

85.     As a result of the fiduciaries failure to act during 1994, the 401(k) plan had lost $13,780,378 since the previous December 31st.

86.     On or about February 21, 1995, participants in the 401(k) Savings Plan received notice stating that they would no longer be required to invest in company stock to receive the ESOP match.   Instead, the Company announced that it would continue to contribute the MK stock, but directly to the 401(k) Plan.   The reason for the change, according to the Notice, was that the original ESOP shares would soon be fully allocated.

87.     The notice also announced that restrictions would be removed from the 401(k) Restricted MK Stock Fund and that participants could move investments from the former 401(k) Restricted Stock Fund to any other plan investment.   It further announced that the Restricted MK Stock Fund would be renamed the MK Stock Fund.   The notice closed by stating "You cannot move your balance from the ESOP."

88.     Thus, in lieu of determining whether any further investment in MK common stock or retention of such stock was prudent, and notifying the participants and beneficiaries that the investment in MK securities over the prior fifteen months may have been imprudent, defendants caused the participants and beneficiaries to be notified in February of 1985

17

that they were free to buy or sell MK stock in the 401(k) plan and that fiduciaries considered further, additional investment in common stock to be a prudent investment for the 401(k) and continued investment in MK common stock to be mandatory and therefore prudent for the ESOP.

89.    While the February 21, 1995, notification provided participants with information that they could change their investment in MK common stock in the 401(k) plan, it provided them with no notice of the reasons known to the fiduciaries as to why they should do so and, in fact, misrepresented and suggested that it continued to be prudent to invest in MK common stock and retain such stock because the ESOP would continue to do so on their behalf.

90.    By that date, if not before, defendants had actual knowledge, or in the exercise of reasonable diligence should have known, that continued investment in MK common shares was not suitable for the participants and beneficiaries in the ESOP and 401(k) Plans.

91.    In May of 1995, participants and beneficiaries in the ESOP were informed that the ESOP was terminated May 10, 1995.

92.    The May 1995 notice explained that the plan was terminated to "provide MK employees greater investment flexibility." Nothing was said about the prudence of continued investment in MK stock and no mention of MK's perilous financial condition was made.  The notice informed participants that they had the option of taking their ESOP account balances in any of three ways:  transferring it in cash or stock to their 401(k) accounts; to other qualified retirement arrangements such as IRAs; or taking it as cash.  This suggested to participants that the investment in  MK stock was a prudent investment for retirement.

18

93.    The termination of the ESOP and the resulting option to transfer shares to unrestricted accounts in the 401(k) Plan were attempts by defendants to avoid retention of an independent and impartial fiduciary, further avoid an orderly sale of the MK shares, and further avoid diversification of the ESOP's assets.  In causing such a delay, defendants acted under a conflict between their duty of loyalty to the Plan as fiduciaries and their interests as directors and officers of the Plan Sponsor.

94.    The calamitous decline in the MK stock price, as well as the defendants' knowledge of MK's deteriorating financial condition, and their own conflicted status, changed circumstances to such an extent that the defendants could have only acted to protect the interest of the 401(k) and ESOP participants and beneficiaries by retaining independent and impartial fiduciaries.

95.    An independent and impartial fiduciary would have recommended the sale of the MK shares.

**Defendants' Failure to Pursue and Protect Participants' Claims**

96.    Despite the fact that they and/or their co-fiduciaries accused of wrongdoing and  were named defendants in the securities class actions and/or state law derivative class actions,  ESOP and/or 401(k) Defendants continued to serve as fiduciaries of the Plans.

97.    As a result, a conflict of interest arose between the positions held by the defendants as named fiduciaries of the Plans and their interests as defendants in the securities class action litigation.  Despite the obvious conflict in having fiduciaries who were also defendants in the securities litigation, the ESOP defendants took no action to procure the

19

resignation of those defendants from their position as plan fiduciaries or to otherwise remedy the conflict.

98.    ERISA required the defendants to investigate potential legal claims of the Plans and to pursue meritorious claims of the Plans.

99.    Despite actual and constructive notice of the serious allegations in the securities litigation, including allegations of misconduct by certain of its own fiduciaries with respect to disclosure of MK's financial condition, neither Plan took any action to investigate the claims in order to consider what, if any, action Plans should take in light of the allegations.

100.    On December 20, 1995, Defendant Tintsman circulated an E-mail to employees of MK advising them that they should not file claims in the securities litigation settlement for stock purchased or sold by the ESOP and by the 401(k) Plans because that was being done by Defendant TRP, then trustee of the 401(k) plan. Defendant Tintsman breached his fiduciary duty by portraying that participants' legal interests were being represented when in fact, no one considered what legal causes participants had and should pursue.

101.    Defendant Tintsman's communication was designed to prevent participants from taking an active role in the securities litigation against MK and thereby possibly discover their ERISA claims against MK and other fiduciaries and, as a consequence, also discover that potential claims on behalf of the plans and their participants and beneficiaries.

102.    Defendants failure to appoint an independent and impartial investment manager for the MK stock held by the 401(k) during 1995 caused the 401(k) to lose an additional $14,220,908 during that year.

20

103.    It was not until February 29, 1996 that Defendant 401(k) Plan retained an independent and impartial fiduciary investment manager to consider the prudence of continued investment in MK stock held by the 401(k).  Defendant (401(k) Plan selected Marine Midland Bank, assisted by Marine Midland's own investment advisor, Duff & Phelps Financial Consulting Co.  Within ten days, Marine Midland determined that the MK stock should be sold.

104.    By the time the stock was sold, in the period March 15 to April 3, 1996, its value had declined to $1.40 per share.

105.    The stock held by participants had lost 95% of its value from two years before.  Throughout the two year period the decline in MK stock's price had been steady, without a sustained upturn.

106.    Defendants failed to take appropriate action to protect the interests of the participants and beneficiaries of the two Plans in connection with the litigation and bankruptcy arising from the mismanagement and wrongdoing by MK's management, including the defendants themselves.  In this connection, defendants failed to retain an independent and impartial fiduciary and independent counsel to represent the interests of the plan participants and beneficiaries in both the securities litigation and the bankruptcy proceedings.

107.    Defendants permitted the interests of then terminated ESOP participants to be represented by legal counsel who simultaneously represented at least defendants Agee and Hanks in the securities fraud litigation.

108.    Defendant Mellon Bank became engaged in the securities settlement litigation as if it were a current trustee of the ESOP with discretionary authority over plan assets.  Mellon Bank did this without affirmatively disclosing to the court considering the settlement of

21

the class action securities litigation that the ESOP had been terminated over a year before and that Mellon Bank in fact no longer served as the trustee.

109.    In its fiduciary position, defendant Mellon Bank operated under a conflict-of-interest.  It was simultaneously serving as the lead bank in a lending syndicate that was negotiating a "pre-packaged" plan of bankruptcy with MK.  As such, Mellon Bank, as fiduciary, could be required to investigate and/or bring a fiduciary breach action against the very debtor with whom it sought to negotiate a favorable resolution to Mellon's creditor claims in the pre-packaged plan of bankruptcy.  Indeed, Mellon had become a large lender to MK in 1995 while Mellon was still the ESOP's Trustee, prior to the ESOP being terminated.

110.    In its role as lender to MK, defendant Mellon became aware of MK's perilous financial condition and mismanagement by company officials, including plan fiduciaries, yet took no action to protect the ESOP's participants.  This inaction was a breach of defendant Mellon's fiduciary duties.

111.    The ESOP and 401(k) Defendants further breached their fiduciary duties by failing to protect the plans, participants and beneficiaries claims against the Debtor, MK, in the bankruptcy proceedings.  Although fiduciary breach claims against a debtor, under 11 U.S.C. § 523(a)(4) may not be discharged in bankruptcy proceedings if a timely complaint pursuant to 11 U.S.C. 523(a)(3) is filed in the Bankruptcy Court, defendants failed to file such a complaint.

112.    Defendants, as fiduciaries, had a duty to act solely in the interest of the Plans' participants and beneficiaries and to protect and preserve the assets of the Plans.

113.    Defendants, as fiduciaries, were required to act with reasonable skill, care, prudence and diligence in view of the prevailing circumstances and in view of the information reasonably available to them including knowledge of their own conflicted status.

114.    Defendants, because of their status as fiduciaries, had a duty to impartially conduct and investigate   the prudence of retaining MK securities in the Plans. Such investigation would have revealed to an impartial  fiduciary that such an investment was imprudent.

115.    Defendants, as fiduciaries, were obligated to identify any claims existing on behalf of the participants and beneficiaries against the fiduciaries, including themselves, and protect the interests of the participants and beneficiaries in pursuing such claims.

116.    Defendants took no actions or insufficient actions to assure that fiduciaries considering the continued retention of MK common stock by the Plans were fiduciaries who did not suffer from any conflicted loyalties due to their participation in MK's management.

117.    Defendants took no actions or insufficient actions to investigate and pursue the breach of fiduciary duty claims on behalf of the Plans and the Plan participants and beneficiaries, in breach of their fiduciary duties.

118.    Defendants did not take actions or insufficient actions to protect or preserve the breach of fiduciary duty claims of the Plan participants and their beneficiaries in the securities litigation and bankruptcy proceedings.  The former ESOP fiduciaries allowed the ESOP to be represented by legal counsel with a conflict of interest since that counsel simultaneously represented at least two of the defendants in the securities litigation action.

119.    Defendants never disclosed to the plaintiffs or the participants and beneficiaries in the class that their interests were adverse to the plaintiffs or the participants and beneficiaries in the class, or that there existed any potential breach of fiduciary duty claims against the defendants.

120.    Defendants never disclosed the facts underlying their wrongdoing to the plaintiffs or the participants/beneficiaries in the class.  Nor did they repudiate their positions of trust.

## CLASS ACTION ALLEGATIONS

121.    Plaintiffs bring this class action on behalf of a class defined as:

All participants in the Morrison Knudsen Employee Stock Ownership Plan ["ESOP"] after December 31, 1993 and their beneficiaries and all participants in the Morrison Knudsen 401(k) Savings Plan ["401(k) Plan"] for whose benefit the 401(k) Plan held MK common stock after December 31, 1993 and their beneficiaries excluding defendants and their beneficiaries.

122.    The class of plaintiffs is so numerous that joinder of all members is impracticable.  Upon information and belief, the number of class members is more than 6,000.

123.    There are questions of fact and law which are common to the entire class. Such common questions include:

(a)    Whether the retention of MK stock by the ESOP from December 31, 1993, to May 10, 1995, was imprudent and a breach of fiduciary duty;

(b)    Whether the failure by the ESOP to retain an independent and impartial fiduciary from December 10, 1993, until the termination of the ESOP on May 10, 1995, was a breach of fiduciary duty;

24

(c)    Whether the failure by the ESOP to protect and represent the interests of the plan participants and beneficiaries with respect to potential claims relating to the unsuitability of the ESOP's MK common stock investment constituted a breach of fiduciary duty;

(d)    Whether the retention by the 401(k) of MK stock from December 31, 1993 until the reorganization of MK in bankruptcy was imprudent and a breach of fiduciary duty;

(e)    Whether the failure by the 401(k) to retain an independent and impartial fiduciary until approximately February 29, 1996 was a breach of fiduciary duty;

(f)    Whether the failure by the 401(k) to protect and represent the interests of the plan participants and beneficiaries with respect to potential claims relating to the unsuitability of the investment in MK common stock constituted a breach of fiduciary duty.

124.    Defendants owed duties to the class members in their capacity as ERISA fiduciaries.    The question of what duties were owed to the class members and whether defendants' conduct breached such duties present common questions of law and fact, susceptible to common proof.

125.    Plaintiffs' claims are typical of the claims of the class.    Plaintiffs have no interests antagonistic to the claims of the class.

126.    Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs are committed to the vigorous representation of the class and have retained competent counsel experienced in the prosecution of complex and class action litigation, including ERISA litigation.    Counsel have agreed to advance the costs of the litigation contingent upon the outcome.

127.    Defendants have acted on grounds generally applicable to the Class, thereby justifying equitable relief for the class as a whole.

128.    Plaintiffs are unaware of any other pending litigation against the Defendants involving the breach of fiduciary duty claims asserted in this Complaint.

129.    Because of the nature of the claims, involving the liability of fiduciaries for their breach of duties commonly owed to all members of the class, no individual class member has an interest in individually controlling the prosecution of his or her claim.

130.    Given ERISA's imposition of a uniform standard of conduct on ERISA fiduciaries, the prosecution of separate actions by individual members of the class would create the possibility of inconsistent adjudications which would establish incompatible standards of conduct for the defendant fiduciaries with respect to their obligations under the plans.

131.    The prosecution of separate actions by individual members of the class would create the possibility of inconsistent adjudications concerning the legal standards of conduct for fiduciaries under these two plans, which could as a practical matter be dispositive of the interests of the other members or could impede their ability to protect their interests.


## COUNT ONE

### BREACHES OF FIDUCIARY DUTY IN THE
### ADMINISTRATION AND INVESTMENT OF THE ESOP

132.    Plaintiffs incorporate herein by reference the allegations of the Complaint set forth in paragraphs 1 to 131 above.

26

133.    Because the ESOP has been terminated, plaintiffs bring these fiduciary breach claims directly on behalf of the participants and beneficiaries of the now-terminated plan.

134.    Defendants Agee, Allen, Anderson, Arrillaga, Brzesinski, Clark, Fox, Garman, Hanks, Hemmeter, Lynch, McCabe, Miller, Peden, Rogers, Roche, Sarsten, Tintsman, Ueberroth and Does 1 through 20 ["ESOP Defendants"] have during the relevant period of time served as fiduciaries to the ESOP.  Their liabilities for breaches of fiduciary duty that occurred prior to the plan termination were not extinguished by the Plan termination.

135.    ESOP Defendants also engaged in actions and omissions after the termination of the ESOP, arising from their duties and obligations as fiduciaries to the ESOP, which also constitute breaches of fiduciary duty.

136.    As set forth more fully above, ESOP Defendants have breached their fiduciary duties to act solely in the interest of the participants and beneficiaries.

137.    As set forth more fully above, ESOP Defendants have breached their fiduciary duties to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of the ESOP, given its nature as a retirement plan for MK's salaried employees.

138.    The actions and inactions of ESOP Defendants have breached their fiduciary duties in violation *inter alia* of 29 U.S.C. §§ 1104, 1106 and 1109.

27

139.    Plaintiffs suffered economic harm, in the form of the diminishment of the assets in the ESOP to provide them retirement benefits as a result of the breaches of fiduciary duty of the ESOP defendants.

## COUNT TWO

### LIABILITY FOR BREACH OF
### FIDUCIARY DUTY BY CO-FIDUCIARIES

140.    Plaintiffs incorporate herein by reference the allegations of the Complaint set forth in paragraphs 1 to 139 above.

141.    Because the ESOP has been terminated, plaintiffs bring these co-fiduciary breach claims directly on behalf of the participants and beneficiaries of the now-terminated plan.

142.    Each of the ESOP Defendants are liable for the breaches of fiduciary responsibility committed by the other ESOP Defendants insofar as each defendant (a) failed to exercise care, skill, prudence and diligence in their fiduciary capacity which enabled the other defendants to commit the breaches complained of;  (b) participated knowingly in the breaches of the other defendants; and/or (c) failed to make reasonable efforts to remedy the breaches of his co-fiduciaries when they became known to non-breaching fiduciaries.  ESOP Plan Defendants, pursuant to 29 U.S.C. § 1109 are required to personally make good to the plan all losses related to the breaches alleged herein.

143.    As a result, ESOP Defendants violated 29 U.S.C. § 1105 and should make good all losses resulting therefrom directly to the former plan participants and beneficiaries.

## COUNT THREE

## BREACHES OF FIDUCIARY DUTY IN THE
## ADMINISTRATION AND INVESTMENT OF THE 401(K) PLAN

144.    Plaintiffs incorporate herein by reference the allegations of the Complaint set forth in paragraphs 1 to 143 above.

145.    Plaintiffs bring these fiduciary breach claims on behalf of the 401(k) Plan.

146.    Defendant 401(k) Plan is a nominal defendant. Defendant 401(k) Plan has failed to act to protect the interests of the plan participants and beneficiaries with respect to the conduct alleged, and failed to protect and preserve the participants and beneficiaries claims. Defendant 401(k) Plan took no action to notify Plaintiffs or the 401(k) Plan participants and beneficiaries of the existence of these claims.

147.    401(k) Plan Defendants have during the relevant period of time served as fiduciaries to the 401(k) Plan. Their liabilities for breaches of fiduciary duty that occurred prior to their termination as fiduciaries were not extinguished by their relinquishment of their positions.

148.    As set forth more fully above, 401(k) Plan Defendants have breached their fiduciary duties to act solely in the interest of the participants and beneficiaries.

149.    As set forth more fully above, 401(k) Plan Defendants have breached their fiduciary duties to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of the 401(k) Plan, given its nature as a retirement plan for MK's employees.

150.    These actions and inaction of ESOP Defendants have breached their fiduciary duties in violation *inter alia* of 29 U.S.C. §§ 1104, 1106 and 1109.

151.    401(k) Plan Defendants, pursuant to 29 U.S.C. § 1109, are required to personally make good to Defendant 401(k) Plan all losses related to the breaches alleged herein.

152.    Plaintiffs, as participants (and beneficiaries of participants) suffered economic harm, in the form of the diminishment of the assets to them in retirement arising from the breaches of fiduciary duty of the 401(k) Plan Defendants.

## COUNT FOUR

### LIABILITY FOR BREACH OF
### FIDUCIARY DUTY BY CO-FIDUCIARIES

153.    Plaintiffs incorporate herein by reference the allegations of the Complaint set forth in paragraphs 1 to 152 above.

154.    Each of the 401(k) Plan Defendants is liable for the breaches of fiduciary responsibility committed by the other 401(k) Plan Defendants insofar as each Defendant (a) failed to exercise care, skill, prudence and diligence in their fiduciary capacity which enabled the other 401(k) Plan Defendants to commit the breaches complained of;  (b) participated knowingly in the breaches of the other 401(k) Plan Defendants; and/or (c) failed to make reasonable efforts to remedy the breaches of his co-fiduciaries when they became aware of such breaches.

155.    As a result, 401(k) Plan Defendants violated 29 U.S.C. § 1105 and should make good to the 401(k) Plan all losses resulting therefrom.

## COUNT FIVE

### BREACHES OF FIDUCIARY DUTY BY
### DEFENDANT MELLON BANK, N.A.
### ACTING AS A FIDUCIARY FOR THE ESOP

156.    Plaintiffs incorporate herein by reference the allegations of the Complaint set forth in paragraphs 1 to 155 above.

157.    Since the ESOP is terminated, Plaintiffs bring this action directly for Mellon to make good to their losses to the ESOP attributable to its breaches of fiduciary duty.

158.    Defendant Mellon served as the Trustee for the assets of the ESOP from 1990 through the termination of the plan and the transfer of the assets.

159.    As Trustee, Mellon had the power and the duty to protect the assets of the ESOP from breaches of fiduciary duty by the ESOP's fiduciaries.

160.    Defendant Mellon exercised discretionary authority in connection with the assets and/or administration of the ESOP, thereby becoming as a fiduciary under ERISA.

161.    Defendant Mellon, even when directed by the ESOP's fiduciaries, was not permitted to act contrary to ERISA's fiduciary provisions under 29 U.S.C. Sec. 1103(a)(1).

162.    While serving as the Trustee for the assets of the ESOP, Mellon also became a major creditor of MK, in which role there was a direct conflict between its interests as creditor to the ESOP's Plan Sponsor, MK, and its role as fiduciary for the plan participants and beneficiaries in the ESOP requiring the assertion of claims against MK and its officers and directors on behalf of the participants and beneficiaries.

31

163.     Mellon failed to act in accordance with ERISA's fiduciary provisions when it did not protect the interests of the participants and beneficiaries of the ESOP, on whose behalf it held the plan assets, by assuring the retention of an independent fiduciary to make investment and other decisions in the interests of the plan participants.

164.     Mellon purported to act as a fiduciary, but failed to act in accordance with ERISA's fiduciary provisions when, *inter alia*, with respect to the shareholder litigation brought against MK, Defendants Agee, Hanks and others, Mellon 1) represented to the District Court that it was representing the interests of the plan participants in the shareholder litigation even though the ESOP had already terminated; 2) was represented by counsel for one of the defendants; 3) permitted the release claims of the ESOP against debtor MK; and 4) failed to take the actions necessary to pursue the legal claims of the participants and beneficiaries with respect to the losses to the ESOP arising from the ESOP defendants' breaches of fiduciary duty.

165.     Mellon committed further breach of fiduciary duties by failing to prevent the discharge of fiduciary breach claims against Debtor MK in the bankruptcy proceeding pursuant to 11 U.S.C. § 523(a)(3) and (4).

166.     These actions and inaction of Defendant Mellon breached its fiduciary duties in violation of *inter alia* 29 U.S.C. §§ 1104, 1106 and 1109.

32

## COUNT SIX

## LIABILITY FOR BREACH OF
## FIDUCIARY DUTY OF CO-FIDUCIARIES
## OF DEFENDANT MELLON BANK, N.A.

167.    Plaintiffs incorporate herein by reference the allegations of the Complaint set forth in paragraphs 1 to 166 above.

168.    Because it exercised fiduciary functions in connection with the ESOP, Defendant Mellon is liable for the breaches of fiduciary responsibility committed by the other ESOP Defendants insofar as Defendant Mellon (a) failed to exercise care, skill, prudence and diligence in its fiduciary capacity which enabled the ESOP Defendants to commit the breaches complained of;  (b) participated knowingly in the breaches of the ESOP Defendants; and/or (c) failed to make reasonable efforts to remedy the breaches of his co-fiduciaries with knowledge of such breaches.

169.    As a co-fiduciary, defendant Mellon violated 29 U.S.C. § 1105 and should make good to the Plaintiffs and the class all losses resulting therefrom.

## COUNT SEVEN

## BREACHES OF FIDUCIARY DUTY BY
## DEFENDANT T. ROWE PRICE TRUST COMPANY
## ACTING AS A FIDUCIARY FOR THE 401(K) PLAN

170.    Plaintiffs incorporate herein by reference the allegations of the Complaint set forth in paragraphs 1 to 169 above.

171.   At all relevant times hereto Defendant T. Rowe Price Trust Company ["TRP"] served as the fund manager and trustee for Defendant 410(k) Plan.

172.   As Trustee, Defendant TRP had the power and the duty to protect the assets of the MK 401(k) Plan from breaches of fiduciary duty by the 401(k) Plan's fiduciaries.

173.   Defendant TRP exercised discretionary authority in connection with the assets and/or administration of the 401(k) Plan, thereby serving as a fiduciary under ERISA.

174.   Defendant TRP provided periodic information to the plan participants and their beneficiaries concerning the 401(k) plan investments.  At no time did TRP disclose to the plan participants and beneficiaries that the continued investment of 401(k) plan assets in MK common stock was or might be imprudent as a retirement plan investment.

175.   At no time did Defendant TRP disclose to the plan participants and their beneficiaries that they might possess claims against the 401(k) plan's fiduciaries for the continuing retention and investment in MK common stock.

176.   Defendant TRP, even when directed by the 401(k) Plan's fiduciaries was not permitted to act contrary to ERISA's fiduciary provisions under 29 U.S.C. § 1103(a)(1).

177.   Defendant TRP failed to act in accordance with ERISA's fiduciary provisions when it failed  to protect the interests of the participants and beneficiaries of the 401(k) plan, on whose behalf it held the plan assets, by the retention of an independent fiduciary to make investment and other decisions in the interests of the plan participants.

178.   Defendant TRP purported to act as a fiduciary when it asserted claims in the shareholder litigation brought against MK, Defendants Agee and Hanks and others, on behalf of the 401(k) plan, but failed to act in accordance with ERISA's fiduciary provisions when, in

doing so it 1) failed to retain independent fiduciary and legal advice to determine the interests of the participants and beneficiaries and 2) failed to take the actions necessary to pursue the legal claims of the participants and beneficiaries with respect to the losses to the 401(k) Plan arising from the 401(k) Plan Defendants' breaches of fiduciary duty.

179.    Defendant TRP, having purported to act as a fiduciary and represent the interests of the participants and beneficiaries, failed to act in accordance with ERISA's fiduciary provisions when it took no actions to assert the non-dischargeable claims of the 401(k) Plan participants against MK during the bankruptcy proceedings, thereby permitted the discharge of fiduciary breach claims against the debtor MK.

180.    These actions and inactions of Defendant TRP breached its fiduciary duties in violation *inter alia* of 29 U.S.C. §§ 1104, 1106 and 1109.

181.    TRP should be required to make good to the 401(k) Plan the losses experienced because of its breaches of fiduciary duty.

## COUNT EIGHT

### LIABILITY FOR BREACH OF
### FIDUCIARY DUTY OF CO-FIDUCIARIES BY
### DEFENDANT T. ROWE PRICE TRUST COMPANY

182.    Plaintiffs incorporate herein by reference the allegations of the Complaint set forth in paragraphs 1 to 181 above.

183.    Because it exercised fiduciary functions in connection with the 401(k) Plan, Defendant TRP is liable for the breaches of fiduciary responsibility committed by the other 401(k) Plan Defendants insofar as Defendant TRP (a) failed to exercise care, skill, prudence and

diligence in its fiduciary capacity which enabled the 401(k) Plan Defendants to commit the breaches complained of;  (b) participated knowingly in the breaches of the 401(k) Defendants; and/or (c) failed to make reasonable efforts to remedy the breaches of his co-fiduciaries with knowledge of such breaches.   As a co-fiduciary, Defendant TRP violated 29 U.S.C. § 1105.

184.    As a result, defendant TRP violated 29 U.S.C. § 1105 and should be required to make good to the 401(k) Plan the losses resulting therefrom.

## PRAYER FOR RELIEF

**WHEREFORE**, Representative Plaintiffs, by their counsel, respectfully request that this Court:

1.    Certify this action as a class action brought pursuant to Fed.R.Civ.P. 23, certify plaintiffs as the class representatives and approve the undersigned attorneys as attorneys for the class;

2.    Grant judgment in plaintiffs' favor for breach of fiduciary duty and/or co-fiduciary breach against all defendants;

3.    Grant equitable relief and/or damages and require defendants to make good the losses incurred by the plans and their participants on account of defendants' breaches of fiduciary duty;

4.    Award plaintiffs their reasonable attorneys' fees, costs and expenses; and

5.    Grant such other equitable and legal relief as the Court deems just.

f:\cases\norsn-kn\pleading\complai3.wpd

Respectfully submitted,

By _____
John C. Grabow
P.O. Box 349
Victor, ID  83455
(208) 787-2303

By _____
J. Brian McTigue
7415 Lynnhurst Street
Chevy Chase, MD  20815
(301) 652-5235

**MALAKOFF DOYLE & FINBERG, P.C.**

By _____
Ellen M. Doyle
Suite 200 - The Frick Building
Pittsburgh, PA  15219
(412) 281-8400

**DATED:**   July 18, 1997

37